IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PALDO SIGN AND DISPLAY COMPANY, an Illinois corporation, individually and as the representative of a class of similarly-situated persons,<br><br>                Plaintiff,<br><br>   v.<br><br>TOPSAIL SPORTSWEAR, INC.,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)  Case No.: 1:08–cv–05959<br>)<br>)  Judge Kennelly<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

      Plaintiff, Paldo Sign and Display Company ("Paldo" or "Plaintiff"), on behalf of itself and the settlement class of similarly-situated persons ("Settlement Class"), requests that the Court enter an order finally approving the parties' Settlement Agreement (the "Settlement" or the "Agreement"). Agreement, Doc. 98-1. The proposed Final Approval Order is attached hereto as Exhibit A and will be submitted to the Court in electronic format.

I.    **Background.**

      On August 22, 2007, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, IL, alleging claims regarding an advertisement Plaintiff received by fax on January 16, 2007. Plaintiff's complaint alleged that Topsail Sportswear, Inc. ("Topsail" or "Defendant") faxed unsolicited advertisements to Plaintiff and a class of others in violation of the Telephone Consumer Protection

1

Act, 47 U.S.C. § 227 (the "TCPA"). Doc. 13.

Defendant is covered by insurance from Hartford Casualty Insurance Company ("Hartford"). Hartford had filed a declaratory judgment action (the "Declaratory Action") against Defendant and Plaintiff, alleging that it owed no duty to defend or indemnify Defendant in this lawsuit. Doc. 98, p. 2, ¶ 5. The Declaratory Action was filed in this Court (Case No. 10 cv 1507 assigned to Judge Gettleman) but was transferred to the U.S. District Court for the Eastern District of North Carolina and assigned Case No. 7:10-CV-148FL. *Id.*

After this Court certified a Rule 23 (b) (3) class over Defendant's objections, the parties (including Hartford) negotiated a settlement through mediation with Hon. Wayne R. Andersen (Ret.). Doc. 98, p. 3, ¶ 7.

On July 12, 2011, Hartford voluntarily dismissed the Declaratory Judgment Action pursuant to the parties' agreement to settle. Doc. 98, p. 2, ¶ 5. , in (the "Declaratory Action"). Agreement, Doc. 98-1.

On August 5, 2011, after consideration of the parties' Settlement Agreement, the Court entered an order preliminarily approving the settlement and approving the class notice plan. Docs. 100 and 101. In accordance with that Order, Plaintiff caused the notice to be faxed to the 10,352 telephone fax numbers involved in this case. *See* Declaration of Andrew Barnett, Doc. 102.

No class member has objected to the settlement, but six have requested exclusion. *See* Declaration of Phillip A. Bock Regarding Receipt of No Objections and Six Exclusion Requests, Exhibit B.

2

On August 7, 2011, Defendant notified the United States Attorney General and the relevant Attorneys General about the settlement, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Doc. 103. (Declaration of Stephanie Tipton stating "Litchfield served by U.S. mail a letter referencing the proposed settlement of this action upon the U.S. Attorney General and the Attorney General of each state in which we have information that a putative class member may reside ... where Defendant believed it was feasible, identified the putative class members believed to be residing in each state."). None of those government entities has objected to the settlement.

II. **Summary of the settlement.**

The key terms of the Settlement are as follows:

    (a)    <u>Certification of the Settlement Class</u>. The parties agreed to a Fed. R. Civ. P. 23 (b) (3) settlement class defined as follows: "All persons to whom Defendant sent advertising facsimiles during the period January 5, 2006 through September 24, 2007 without their prior express invitation or permission." Agreement, Doc. 98-1, p. 3, ¶ 3, p. 20, ¶ 2; Doc. 101, p. 2, ¶ 2.

    (b)    <u>Representation of the Settlement Class</u>. The parties agreed that Plaintiff would be the "Class Representative" and that Plaintiff's attorneys would be "Class Counsel." Agreement, Doc. 98-1, pp. 3-4, ¶ 4.

    (c)    <u>Monetary Relief to the Members of the Settlement Class</u>. Hartford has created a settlement fund of $2,000,000.00 (the "Settlement Fund"), available to pay the valid claims submitted by members of the

Settlement Class, Class Counsel's fees and expenses, and an incentive award to the Class Representative. Agreement, Doc. 98-1, pp. 4-5, ¶¶ 6, 10. Each class member who submits a timely and valid claim form will be mailed a check in the amount of $42 from the Settlement Fund for each of Defendant's faxes sent to them, as reflected in the Biggerstaff Database. Agreement, Doc. 98-1, p. 5, ¶ 9.

  (d) <u>Class Notice</u>. The parties agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile. Agreement, Doc. 98-1, p. 4, ¶ 8. The notice includes instructions opting out, objecting, or submitting a claim form by fax or mail to Class Counsel (who are acting as the claims administrator only to reduce administrative expenses). Doc. 102-1; Agreement, Doc. 98-1, p. 6, ¶ 13.

  (e) <u>Settlement Class Opt-Out Rights</u>. A class member could seek to be excluded from the Agreement and from the settlement by opting out of the Settlement Class within the time period set by the Court. Doc. 102-1, pp. 2-3. Six class members exercised their right to opt out in this case. <u>Exhibit B.</u>

  (f) <u>Release</u>. As set forth in the Agreement, the Settlement Class releases all claims that were brought or could have been brought, as defined in the Agreement, in this action against Defendant and the other released parties about "advertisements faxed to the Database by or on behalf of Topsail during the period January 5, 2006 through September 24, 2007." Agreement, Doc. 98-1, pp. 7-8, ¶ 16.

4

III.  The Settlement Class was notified about the settlement.

Rule 23 (e) (1) requires, "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Preliminary Approval Order, Plaintiff caused the approved class notice to be faxed to the Class members. Docs. 102, 102-1.

Here, the content of the parties' Notice complied with Rule 23 (c) (2) (B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)."). The class notice stated all of those things. Doc. 102-1.

IV.  The Court should finally approve the settlement.

    A.  Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Technologies, Inc. v. DHL*

5

*Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

      **B.    Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.**

Courts typically consider the following factors in evaluating a class action settlement: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby v. Bayh*, 75 F. 3d 1191, 1198-1199 (7th Cir. 1996). Here, these factors show the settlement should be approved.

           **1.    Strength on the merits compared to the settlement amount.**

Through discovery and computer analysis, Plaintiff identified 10,350 fax numbers that Plaintiff alleges were sent a total of 30,101 unsolicited advertisements by fax. Doc. 78-16 (Biggerstaff Report, dated 6/18/10).

The parties negotiated Hartford's agreement to create a settlement fund of $2,000,000.00. Agreement, Doc. 98-1, p. 2. Although Hartford contested insurance coverage in the Declaratory Action, Hartford agreed to settle to avoid the risks and expenses of further litigation in both cases. As part of the settlement, Hartford

dismissed the Declaratory Action already.

Each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will be mailed a check in the amount of $42.00 for each of Defendant's faxes successfully sent to them. Agreement, Doc. 98-1, pp. 4-5, ¶¶ 6, 9. The Biggerstaff Report (Doc. 78-16) shows the number of faxes received by each fax number and the claim form requires only that the claimant identify himself as a member of the class, by providing contact information and verifying ownership of his fax number during the time when the faxes at issue were sent. Agreement, Doc. 98-1, p. 26 of 33.

Defendant agreed not to send any future fax advertisement in violation of the TCPA, and agreed to the entry of an injunction prohibiting future violations of that statute. Agreement, Doc. 98-1, p. 4, ¶ 7.

This settlement is an excellent outcome and result for the Class. Defendant lacks the assets to pay a class-wide judgment in this case, except through its insurance from Hartford. Hartford contends that the policy provides no coverage, but has agreed to settle to avoid further expense and exposure to liability. Hartford has created a $2,000,000 settlement fund as a means of resolving the two controversies (the TCPA claims and the insurance coverage dispute). Without the settlement, Hartford ultimately might not pay.

    2.    **Defendant's ability to pay.**

In the context of a class action settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison,*

7

*Illinois*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997) (Castillo, J.). Here, without its insurer, Defendant has no ability to pay a class-wide judgment, but Hartford's ability to pay is not in question.

### 3. The costs of further litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception. Further litigation of this case would require a significant commitment of time and financial resources. In addition, in the absence of settlement the parties would brief summary judgment. If the Court denied summary judgment, a lengthy and expensive trial would occur. Given the nature of the case, it is a most likely that all post-trial appellate rights would be exercised. The Seventh Circuit has not yet considered summary judgment on trial issues in a TCPA case. The settlement avoids the uncertainty, length of time and high costs associated with continuing this hard-fought litigation. The Court should finally approve the settlement because the settlement will minimize the inevitable costs of future litigation of this matter.

### 4. Opposition.

A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Here, six class members have opted out of the settlement, and no class member has objected. <u>Exhibit B</u>. Additionally, the relevant Attorneys General and the United

8

States Attorney General were notified about the settlement, as required by the Class Action Fairness Act, 28 U.S.C. § 1715, and none of them lodged any objection to the settlement. Doc. 103. A lack of opposition shows a favorable reaction to the settlement that supports final approval.

### 5. Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement record proves that the settlement is not the product of collusion. Plaintiff and Defendant reached this Agreement only after considering: (1) the benefits to the class; (2) the unfeasibility of individual judgments; (3) the evidence of liability in the case; and (4) the risks, costs, uncertainties, and delays of litigation. The settlement came after extensive and hard-fought litigation by experienced attorneys. The settlement was mediated at arm's-length by a retired U.S. District Court Judge who mostly kept the parties in separate rooms at JAMS to avoid confrontations and arguments about the merits of the two cases. The settlement did not result from collusion.

### 6. Opinion of counsel.

Plaintiff and its counsel have concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Class Counsel have experience litigation TCPA class actions and the insurance coverage issues involving claims about advertising faxes. *E.g.,* Docs. 78-14, 78-15. They have been

9

appointed class counsel in dozens of such cases. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.); *G.M. Sign, Inc. v. Group C Comm., Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.).

*See, e.g., Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,* 223 Ill.2d 352 (Ill. 2006); *Eclipse Manufacturing Co. v. U.S. Compliance Co.,* 2007 WL 4259439 (Ill. App. Ct. 2007); *Ins. Corp. of Hanover v. Shelborne Assoc.*, 905 N.E.2d 976 (Ill. App. 1st Dist. 2009); *Pekin Ins. Co. v. XData Solutions, Inc.*, No. 1-10-2769, --- N.E.2d ---, 2011 WL 4578485, 2011 IL App (1st) 102,769 (1st Dist. Sept. 30, 2011); *Landmark American Ins. Co. v. NIP Group, Inc.,* 2011 WL 4396985 (1st Dist. Apr. 25, 2011) (unpublished decision); *Terra Nova Ins. Co. v. Fray-Witzer,* 869 N.E.2d 565, 449 Mass. 406 (Mass. 2007); *Owners Ins. Co. v. European Auto Works, Inc..,* Civ. No. 10-2868, --- F. Supp. 2d ---, 2011 WL 3847469 (D. Minn. Aug. 30, 2011). Class Counsel have extensive experience with class actions generally, and with TCPA class actions in particular. Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

7. **Stage of proceedings and amount of discovery.**

The stage of proceedings and amount of discovery supports final approval. The members of the class have been identified and notified. The parties have compiled necessary discovery, and exchanged documents and data sufficient for Plaintiff and its attorneys to evaluate the strength of this case.

8. **Public interest.**

Courts have held that a settlement of class action litigation serves the public interest. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980). Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiff requests that the Court approve the proposed settlement.

V. **Conclusion.**

WHEREFORE, plaintiff Paldo Sign and Display Company respectfully requests that the Court enter the parties' settlement and enter the proposed Final Approval Order, which was attached as Exhibit 1 to the Settlement Agreement and is submitted herewith as <u>Exhibit A</u> (and will be submitted electronically).

          Respectfully submitted,


          By: <u>/s/ Phillip A. Bock</u>
             One of its attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| David M. Oppenheim | Tod A. Lewis |
| Ryan M. Kelly | James M. Smith |
| ANDERSON + WANCA | BOCK & HATCH, LLC. |
| 3701 Algonquin Road, Suite 760 | 134 N. La Salle Street, Suite 1000 |
| Rolling Meadows, IL 60008 | Chicago, IL 60602 |
| Telephone: 847/368-1500 | Telephone: 312/658-5500 |